**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JENNIFER LE FEUVRE,

    Plaintiff,

    v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

    Defendants.

Case No.: 1:26-cv-00651

Judge Jeffrey I. Cummings

Magistrate Judge Beth W. Jantz

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED *EX PARTE* MOTION**
**FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A**
**TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND**
**EXPEDITED DISCOVERY**

Plaintiff, Jennifer Le Feuvre ("Le Feuvre" or "Plaintiff"), submits this Memorandum in

support of Plaintiff's Renewed Ex Parte Motion for Entry of a Temporary Restraining Order,

including a temporary injunction, a temporary asset restraint, and expedited discovery, together

with leave to provide notice of further proceedings by electronic means under Rule 65(a)(1) (the

"Ex Parte Motion").

i

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................... 1

II. STATEMENT OF FACTS ............................................................................................. 3

    A. Plaintiff's Copyrights and Products .......................................................................... 3

    B. Defendants' Unlawful Activities ............................................................................... 3

        i. Defendants Operate Legitimate-Looking Internet Stores ..................................... 4

        ii. Defendants Use Fictitious Aliases and Common Tactics to Evade Take Down ........... 4

III. ARGUMENT ............................................................................................................... 5

    A. This Court Has Personal Jurisdiction Over Defendants, as the Court Has Already
        Found ...................................................................................................................... 6

    B. Standard for Temporary Restraining Order and Preliminary Injunction ........................... 7

    C. Plaintiff Will Likely Succeed on the Merits ............................................................... 8

    D. There is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in
        the Absence of Preliminary Relief .......................................................................... 9

    E. The Balancing of Harms Tips in Plaintiff's Favor ....................................................... 9

    F. Issuance of the Injunction is in the Public Interest ..................................................... 10

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ........................................... 11

    A. A Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of
        Plaintiff's Works is Appropriate ............................................................................. 11

    B. Preventing the Fraudulent Transfer of Assets is Appropriate ......................................... 11

    C. Plaintiff is Entitled to Expedited Discovery ............................................................. 12

    D. Notice of Further Proceedings by Electronic Means is Warranted Under Rule 65(a)(1);
        Formal Service of Process is Reserved for a Later Motion ........................................ 13

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ........................................... 16

VI. CONCLUSION ........................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992) ............................................ 8

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) ................... 12

*Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ........... 10

*Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ...................................... 10

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1
    (N.D. Ill. May 15, 2001) ............................................................................................................. 7

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) ..................... 6

*CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ................................................. 12

*Curry v. Revolution Labs., LLC*, 949 F.3d 385, 399-400 (7th Cir. 2020) ....................................... 7

*Deckert v. Independence Shares Corp.*, 311 U.S. 282, 288-90 (1940) ......................................... 12

*Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000) ................................. 8

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308, 324-25 (1999) ...... 12

*Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1332 (7th Cir. 1977) ........... 9

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999) ...................... 17

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988) ...... 9

*JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) ................................... 8

*Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 177 F.4th 793 (7th Cir. 2026)1, 14, 16

*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994) ...................... 10

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) .................. 12

*Liu v. Monthly*, 170 F.4th 1090 (7th Cir. 2026) ......................................................................... 1, 6

*Lorillard Tobacco Co. v. Montrose Wholesale Candies*, No. 03-cv-4844, 2005 WL 3115892
    (N.D. Ill. Nov. 8, 2005) .............................................................................................................. 12

*MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) .................... 9

*Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015) ............. 17

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ................................ 15

*NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022) ..................................... 6, 7, 15

*NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp.
    3d 790, 796 (N.D. Ill. 2021) ...................................................................................................... 16

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 & n.13 (1978) ...................................... 13

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) .............. 7

*Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989) .............................................. 16

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ....................... 12

*Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950) ........................................... 10

*Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) ................................. 7, 8, 10

*uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) ................................. 7

*Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1014-15 (C.D. Cal. 2011) ..... 9, 10


**Statutes**

17 U.S.C. § 101 ........................................................................................................................... 6, 8
17 U.S.C. § 501 ............................................................................................................................... 8
17 U.S.C. § 504(b) ........................................................................................................................ 11
28 U.S.C. § 1331 ............................................................................................................................. 6
28 U.S.C. § 1391 ............................................................................................................................. 6

28 U.S.C. §§ 1338(a)-(b) ........................................................................................ 6

735 ILCS 5/2-209(a)(2), (c) .................................................................................... 7

**Rules**

Fed. R. Civ. P. 26(b)(2)........................................................................................ 13

Fed. R. Civ. P. 4(f)(3) .................................................................................... 1, 14

Fed. R. Civ. P. 65(a)(1).............................................................................. passim

Fed. R. Civ. P. 65(b) ......................................................................... 2, 5, 11, 14

Fed. R. Civ. P. 65(c) ........................................................................................ 17

Fed. R. Civ. P. 65(d)(2)(C) ........................................................................ 11, 13

## MEMORANDUM OF LAW

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff brings this action against the defendants identified on Second Amended Schedule A [19] (collectively, the "Defendants") for copyright infringement. As alleged in the Complaint, Defendants are selling unauthorized products that are direct copies or derivative works of the copyrighted subject matter of Plaintiff's registered works, the Micklyn Le Feuvre Works. Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling infringing products through the fully interactive, commercial internet stores identified in Second Amended Schedule A (collectively, the "Defendant Internet Stores"). Defendants' unauthorized conduct is done with the intent to generate profits by infringing and trading off Plaintiff's valuable rights.

On June 26, 2026, this Court entered minute entry order [25], holding that personal jurisdiction is proper and finding that "plaintiff has presented evidence of completed purchases of the allegedly infringing products to customers in Illinois as to each defendant listed in Second Amended Schedule A." [25] (citing *Liu v. Monthly*, 170 F.4th 1090 (7th Cir. 2026)). However, the Court denied Plaintiff's original motion for a temporary restraining order ("TRO") under *Liu*, and then denied Plaintiff's later motion, which had sought leave to conduct expedited discovery and electronic service of process, without prejudice under *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 177 F.4th 793 (7th Cir. 2026), because counsel's address-diligence declaration was conclusory and generic, and it directed that any renewed motion for electronic service include specific, per-defendant diligence. [25].

Accordingly, Plaintiff has restructured her request. This Motion distinguishes notice from service. Plaintiff does not ask the Court to authorize formal service of process under Rule 4(f)(3)

1

at this time. Instead, Plaintiff only seeks the emergency, status-quo-preserving relief namely a temporary restraining order (which issues ex parte under Rule 65(b)), a temporary asset restraint, and expedited discovery, together with leave to provide notice of the forthcoming preliminary-injunction motion and later proceedings by electronic means under Rule 65(a)(1). Plaintiff reserves the request for alternative service for a later motion that will make the specific, per-defendant address-diligence showing required by *Kangol* and this Court's Order [25]. This sequencing is consistent with the Court's ruling. Plaintiff does not seek to circumvent *Kangol*, but instead reserves the required *Kangol* showing for the procedural stage of formal service.

Ancillary to and as part of the TRO, Plaintiff respectfully requests that this Court (1) temporarily restrain Defendants' continued manufacture, importation, distribution, offering for sale, and sale of infringing products bearing the Micklyn Le Feuvre Works; (2) temporarily restrain Defendants' assets to preserve Plaintiff's right to an equitable accounting; (3) authorize expedited discovery allowing Plaintiff to obtain from Amazon and the payment processors each Defendant's contact e-mail and financial-account information; and (4) authorize Plaintiff to give notice of the preliminary-injunction motion and subsequent proceedings by electronic means under Rule 65(a)(1).

Considering the covert nature of offshore infringing activities and the need to establish an economic disincentive for infringement, courts regularly issue such orders. Plaintiff's well-pleaded factual allegations, which must be accepted as true, and the evidence submitted through declarations establish that issuing a temporary restraining order against Defendants is necessary and proper. Plaintiff can demonstrate a strong likelihood of success on the merits: Plaintiff is the owner of valid copyright registrations, and each Defendant sold products that infringe the Micklyn Le Feuvre Works. Defendants have and continue to irreparably harm Plaintiff through diminished

goodwill and damage to Plaintiff's reputation, for which monetary damages are inadequate. And issuance of an injunction is in the public interest because it will prevent unknowing consumers from being deceived into purchasing infringing products.

## II. STATEMENT OF FACTS

### A. Plaintiff's Copyrights and Products

Jennifer Le Feuvre is an artist and surface pattern designer who produces works under the name "Micklyn Le Feuvre" and creates designs used on home décor, furniture, wall art, and many other products. *See* Complaint [1] at ¶¶ 3, 8; Declaration of Jennifer Le Feuvre (the "Le Feuvre Declaration") [15-3] at ¶ 3. Long before Defendants' acts described herein, Plaintiff created and published the Micklyn Le Feuvre Works. Plaintiff is the owner of United States Copyright Registration Nos. VA 2-395-813; VA 2-392-451; VA 2-395-816; VA 2-392-419; VA 2-392-421; VA 2-392-447; VA 2-396-036; VA 2-392-415; VA 2-395-881; VA 2-396-031; VA 2-396-030; VA 2-392-423; VA 2-392-458; VA 2-395-815; VA 2-395-872; VA 2-395-873; VA 2-395-882; VA 2-395-892; and VA 2-396-033 (collectively, the "Micklyn Le Feuvre Works"). Complaint [1] at ¶ 5; *see also* Le Feuvre Declaration [15-3] at ¶ 5. True and correct copies of the federal copyright registration certificates for the Micklyn Le Feuvre Works are attached to the Complaint as Exhibit 1. Substantial time, money, and other resources have been expended in developing, advertising, and otherwise promoting the Micklyn Le Feuvre Works, which are recognized and associated by consumers, the public, and the trade with Plaintiff. *See id*. at ¶ 7

### B. Defendants' Unlawful Activities

The success of the Micklyn Le Feuvre Works has resulted in significant infringement of the copyrights. The Defendant Internet Stores, seventeen Amazon marketplace storefronts identified in Second Amended Schedule A [19], have been identified and linked to marketplace

3

listing offering for sale, selling, and importing unauthorized products bearing the Micklyn Le Feuvre Works to consumers in this judicial district and throughout the United States. Declaration of Keith A. Vogt ("Vogt Declaration") at ¶¶ 5-9. Plaintiff's investigation confirmed a completed purchase of an infringing product from each of the seventeen Defendants, each shipped to a customer in Illinois. Vogt Declaration at ¶¶ 6-8; *see* Le Feuvre Declaration [15-3] at ¶ 9; Sealed Exhibit 1 [21]. Those completed purchases are the evidence the Court credited in its June 26, 2026, Order [25].

i. Defendants Operate Legitimate-Looking Internet Stores

Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine products bearing the Micklyn Le Feuvre Works. Vogt Declaration at ¶ 3. Plaintiff has not licensed or authorized Defendants to use the Micklyn Le Feuvre Works, and none of the Defendants is an authorized retailer of genuine products bearing those works. *See* Le Feuvre Declaration [15-3] at ¶ 9.

ii. Defendants Use Fictitious Aliases and Common Tactics to Evade Take Down

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. Vogt Declaration at ¶ 4. Upon information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Second Amended Schedule A, as well as other unknown fictitious names and addresses. *Id.* Such registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope of their illegal operation and to avoid being shut down. *Id.*

4

There are similarities among the Defendant Internet Stores. Many of the Defendant listings offer home décor and related products, such as doormats, rugs, and other decorations, bearing infringing reproductions of Plaintiff's illustrations, suggesting that the infringing products come from a common source and that, upon information and belief, Defendants are interrelated. Further, infringers such as Defendants typically operate multiple accounts behind layers of payment gateways so that they can continue operation. Upon information and belief, Defendants maintain offshore bank accounts and regularly move funds from their accounts to offshore bank accounts outside the jurisdiction of this Court. The tactics used by Defendants to conceal their identities make it difficult for Plaintiff to discover the true identities of the Defendants, the exact interworking of the Defendants' network, and the relationship among Defendants. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to further amend the Complaint.

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the Micklyn Le Feuvre Works. Without the relief requested by this Motion, Defendants' unlawful activity will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an ex parte temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). In the absence of a temporary restraining order without notice, the Defendants can and likely will modify registration data and content, redirect traffic to other websites and marketplace accounts in their control, and move any assets from U.S.-based accounts,

5

including Amazon or similar accounts. Courts have recognized that civil actions against infringers present special challenges that justify proceeding on an ex parte basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often rendered useless if notice is given to the infringers"). This Court has original subject-matter jurisdiction over the claims in this action pursuant to the Federal Copyright Act, 17 U.S.C. § 101 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

**A. This Court Has Personal Jurisdiction Over Defendants, as the Court Has Already Found**

The personal-jurisdiction question in this case is settled. In its June 26, 2026, Order, the Court found: "plaintiff has presented evidence of completed purchases of the allegedly infringing products to customers in Illinois as to each defendant listed in Second Amended Schedule A." [25] (citing *Liu v. Monthly*, 170 F.4th 1090 (7th Cir. 2026)). That finding disposes of the sole deficiency that had caused the Court to deny Plaintiff's original TRO motion under Liu. In its April 2, 2026 Order, the Court had explained, following Liu, that screenshots showing a checkout page with the infringing product and a Chicago shipping address, but not a completed purchase, were insufficient to establish personal jurisdiction. [18] (quoting *Liu*, 170 F.4th at 1093-94). Plaintiff cured that deficiency by documenting the actual completed purchases from each Defendant. The Court has now credited that evidence. Personal jurisdiction over each of the seventeen Defendants is therefore established on this record.

The Court's finding rests on settled Seventh Circuit law. Personal jurisdiction is proper when a defendant purposefully directs its activities at Illinois via a third-party online retailer such as Amazon.com and makes an actual sale into the forum. *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022) ("[Defendant's] actions certainly can be characterized as purposeful. It

6

established an online store, using a third-party retailer, Amazon.com. Through this online store, it unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so."). In *NBA Properties*, the Seventh Circuit held that the defendant's sale of an accused product to an Illinois customer, a completed transaction, established minimum contacts and rendered the exercise of jurisdiction constitutionally reasonable. *Id*. at 623-27; *see also Curry v. Revolution Labs., LLC*, 949 F.3d 385, 399-400 (7th Cir. 2020). That is precisely what the record here shows: each Defendant operated an interactive Amazon storefront, asserted a willingness to ship to Illinois, and in fact completed a sale of an infringing product into Illinois. Vogt Declaration at ¶¶ 6-8; *see also* [21].

Illinois' long-arm statute reaches to the limits of due process. 735 ILCS 5/2-209(a)(2), (c). Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as true and any factual disputes resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Plaintiff has more than satisfied that burden here, and the Court has so found. [25].

**B. Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit have held that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g., Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001). A party seeking a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. See *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, it must consider the harm the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. Id. Finally, the Court must consider the effect on the public interest. *Id*. The Court then weighs all of these factors, sitting as would a chancellor in equity. *Id*. (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). Under this sliding-scale approach, the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff. *Ty, Inc.*, 237 F.3d at 895-96; *see also Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000).

## C. Plaintiff Will Likely Succeed on the Merits

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). Copyright protection extends to works derived from the original work, because Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works . . . or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

Here, Plaintiff owns the registered copyrights for the Micklyn Le Feuvre Works, which constitutes prima facie evidence of the validity of the copyrights and of Plaintiff's ownership. Complaint [1] at ¶ 5. Plaintiff's investigation established, and the Court has found, that each Defendant sold products bearing infringing versions of the Micklyn Le Feuvre Works into Illinois. Vogt Declaration at ¶¶ 6-8; [25]. The accused products use the protected works or are derived from the distinctive creative content found in the Micklyn Le Feuvre Works. As such, the infringement is clear and establishes that Plaintiff is likely to succeed on the merits of this claim.

8

**D. There is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

By analogy, in the closely related trademark context, courts have recognized that irreparable injury "almost inevitably follows" from an inability to control the use of one's protected marks or works, because such injury "may not be fully compensable in damages." *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1332 (7th Cir. 1977). Similarly, "[t]he most corrosive and irreparable harm" in that context is "the inability of the victim to control the nature and quality of the defendants' goods.*" Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988).

The harms caused by the copyright infringement of the Micklyn Le Feuvre Works are equally insidious. The infringements deprive Plaintiff of the ability to control the creative content protected by the copyrights, devalue the works by associating them with inferior-quality goods, and undermine the value of the copyrights by creating the impression that infringement may be undertaken with impunity, which threatens Plaintiff's ability to develop further artwork and markets for the existing works. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007); *Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1013-14 (C.D. Cal. 2011). The difficulty of collecting damages from anonymous, offshore online sellers who move funds beyond this Court's reach independently establishes the inadequacy of any legal remedy. Accordingly, Plaintiff has established that it will be irreparably harmed by Defendants' infringing conduct.

**E. The Balancing of Harms Tips in Plaintiff's Favor**

If the Court is satisfied that Plaintiff has demonstrated a likelihood of success, no adequate remedy at law, and the threat of irreparable harm, it must next balance the harm Defendants will

9

suffer if preliminary relief is granted against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895.

As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the [intellectual property] owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992). The same is true in the copyright context, since Defendants cannot complain of being forced to cease their infringement. *Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1014-15 (C.D. Cal. 2011). Because Defendants have been profiting from the sale of infringing products, the balance of equities tips decisively in Plaintiff's favor.

**F. Issuance of the Injunction is in the Public Interest**

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983). Federal courts have long held that the intellectual-property laws are "concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950). The injury to the public here is significant, and the injunctive relief Plaintiff seeks is intended to remedy that injury by stopping the ongoing misappropriation of Plaintiff's protected creative works. Unless Defendants' unauthorized use of the Micklyn Le Feuvre Works is enjoined, the public will continue to receive

10

unauthorized, uncontrolled reproductions of those works, undermining the incentive structure that copyright protection is designed to preserve. For these reasons, granting Plaintiff's Renewed Motion is in the public interest.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

Rule 65(b) provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Rule 65(d)(2)(C), this Court has the power to bind third parties, such as financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. The facts in this case warrant such relief.

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Works is Appropriate

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of the Micklyn Le Feuvre Works on or in connection with all Defendant Internet Stores and to cease their acts of copyright infringement. Such relief is necessary to stop the ongoing harm to the copyrights and to consumers and to prevent the Defendants from continuing to benefit from their unauthorized use of the Micklyn Le Feuvre Works. The need for ex parte relief is magnified in today's global economy, where infringers can operate over the internet in an anonymous fashion. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of intellectual property.

### B. Preventing the Fraudulent Transfer of Assets is Appropriate

Plaintiff requests an ex parte restraint of Defendants' assets to preserve Plaintiff's right to an equitable accounting of Defendants' profits pursuant to 17 U.S.C. § 504(b). Issuing an ex parte restraint will ensure Defendants' compliance. If such a restraint is not granted, Defendants may

11

disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which would render an accounting meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when the plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc*., 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc*., 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, No. 03-cv-4844, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005), entered an asset-restraining order in an intellectual-property infringement case, recognizing that a court may restrain assets in a suit seeking equitable relief. *See Deckert v. Independence Shares Corp*., 311 U.S. 282, 288-90 (1940) (recognizing an equitable-claim exception permitting a court to freeze assets pending suit where the plaintiff seeks equitable relief); *see also Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308, 324-25 (1999) (declining to extend that exception to a suit seeking only a legal money judgment, and distinguishing Deckert on that ground). *Lorillard*, 2005 WL 3115892, at *13; *see also CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002). Because Plaintiff seeks disgorgement of Defendants' profits, an equitable remedy, this Court has the authority to freeze Defendants' assets. Accordingly, an injunction preventing the transfer of Defendants' assets is proper.

## C. Plaintiff is Entitled to Expedited Discovery

The Supreme Court has recognized that discovery is available to help resolve doubts about a court's own competency to hear a case. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340,

12

351 & n.13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."). A district court has wide latitude in determining whether to grant a party's request for discovery, and courts may permit discovery to aid in the identification of unknown defendants. *Se*e Fed. R. Civ. P. 26(b)(2).

Defendants are using the third-party marketplace and payment processor Amazon, which increases their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' contact e-mail addresses and their bank and payment-system accounts, any asset restraint would be of limited value, and Plaintiff would be unable to give the electronic notice as described below. Plaintiff therefore requests expedited discovery, directed to Amazon and the relevant payment processors, of (i) each Defendant's contact and e-mail information and (ii) the financial-account information needed to effectuate the asset restraint. The requested discovery has been limited to what is essential to prevent further irreparable harm and to permit Plaintiff to give notice of these proceedings.

Under Rule 65(d)(2)(C), this Court has the power to bind any third party in active concert with the Defendants that is given notice of the order to provide expedited discovery. Plaintiff's counsel is aware that the same third parties have complied with identical requests in previous similar cases without undue burden. Because Defendants have engaged in deceptive practices to hide their identities and accounts, Plaintiff's asset restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

**D. Notice of Further Proceedings by Electronic Means is Warranted Under Rule 65(a)(1); Formal Service of Process is Reserved for a Later Motion**

Plaintiff is mindful of, and does not seek to relitigate, this Court's June 26, 2026 Order. In that Order, the Court denied without prejudice Plaintiff's prior renewed request for leave to

conduct expedited discovery and electronic service of process, in light of *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 177 F.4th 793 (7th Cir. 2026), because counsel's supporting declaration contained only conclusory and generic assertions and did not demonstrate reasonably diligent efforts to ascertain and verify each defendant's mailing address. [25]. The Court directed that if Plaintiff ultimately files a renewed motion for electronic service, she must include the specific, diligent efforts taken to determine the physical address, and the outcome of those efforts, as to each defendant. Id.

Plaintiff takes the Court at its word and has restructured its request to honor that direction. This Motion does not seek an order authorizing formal service of process under Rule 4(f)(3). Plaintiff reserves any request for formal electronic service, and the specific, per-defendant address-diligence showing that *Kangol* and the Court's Order require, for a separate, later motion. What Plaintiff seeks now is narrower and legally distinct: leave to provide notice of the forthcoming preliminary-injunction motion and subsequent proceedings by electronic means under Rule 65(a)(1). Notice and service are governed by different rules and different standards, and the distinction is dispositive here.

A TRO requires no notice at all. Rule 65(b)(1) authorizes issuance of a temporary restraining order without notice to the adverse party where the specific facts show immediate and irreparable injury before the adverse party can be heard. Fed. R. Civ. P. 65(b)(1). Nothing in *Kangol* disturbs that authority; *Kangol* addressed formal service of the summons and complaint under the Hague Service Convention, not the ex parte issuance of emergency relief. The TRO requested here may issue on the present record without any notice to Defendants.

A preliminary injunction requires notice, not completed formal service. Rule 65(a)(1) provides that "[t]he court may issue a preliminary injunction only on notice to the adverse party."

14

Fed. R. Civ. P. 65(a)(1). The Rule requires notice, not proof of completed formal service of process under Rule 4. The controlling constitutional standard is whether the method of notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). For online sellers who transact with the public exclusively through electronic means, e-mail notice to the addresses the sellers themselves use to operate their storefronts easily satisfies that standard. The Seventh Circuit's reasoning in *NBA Props., Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022), confirms the point: a seller that "established an online store, using a third-party retailer, Amazon.com," and "unequivocally asserted a willingness to ship goods to Illinois," *id*. at 624, is a seller who monitors and relies on that very electronic channel, making e-mail the method most likely, not least likely, to reach it.

That is precisely this case. Each Defendant operates exclusively through an Amazon storefront and communicates with Amazon and with its customers by electronic means. Vogt Declaration at ¶¶ 3, 5-9. Despite providing incomplete or unreliable physical-address information to the marketplace, each Defendant must maintain an operative e-mail account to receive order notifications, customer messages, and platform communications and to manage its account. *See id.*. at ¶¶ 8-9. Notice sent to those electronic addresses, supplemented as appropriate by electronic publication and by the notice Defendants receive from Amazon and the payment processors when the asset restraint and discovery order are transmitted, is reasonably calculated to apprise each Defendant of the preliminary-injunction motion and afford it the opportunity to be heard. *Mullane*, 339 U.S. at 314.

Authorizing electronic notice at this stage does not implicate *Kangol*'s Hague-Convention holding. *Kangol* held that where the Hague Service Convention applies, it prohibits service of

15

process by e-mail in China. 177 F.4th at 800 . *Kangol* did not decide when a defendant's address is "not known" for purposes of the Convention's Article 1 exception; it remanded that question, noting that district courts handling Schedule A cases "typically require plaintiffs to make 'reasonably diligent efforts to ascertain and verify [the] defendant's mailing address' before deeming the defendant's address unknown." *Id*. at 799 (quoting *NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021)). That holding, and that practice, both govern formal service of process, the step Plaintiff has deliberately deferred. Neither governs the giving of notice of a motion under Rule 65(a)(1), which is measured by the *Mullane* reasonableness standard and does not depend on the Hague Convention. By seeking notice now and reserving service, with its per-defendant -diligence showing, for a later motion, Plaintiff sequences the two steps exactly as the Court's Order contemplates: the *Kangol* diligence-showing will be made when, and in the motion in which, it is legally required.

Accordingly, Plaintiff respectfully requests leave under Rule 65(a)(1) to provide notice of the preliminary-injunction motion and subsequent proceedings to Defendants by electronic means, namely e-mail to the addresses identified through the requested expedited discovery and any addresses provided by third parties, and/or electronic publication of a link to the relevant documents, while reserving formal service of process for a later motion presenting the per-defendant diligence identified in the Court's Order [25].

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir.

16

1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of infringement, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Ten Thousand U.S. Dollars ($10,000). *See, e.g., Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015).

## VI. CONCLUSION

The Micklyn Le Feuvre Works are an important part of Plaintiff's business. Without entry of the requested relief, the sale of infringing products will continue unabated. Entry of an ex parte order is necessary to protect Plaintiff's rights, to prevent further harm to Plaintiff and the consuming public, and to preserve the status quo. This Court has already found the personal-jurisdiction predicate satisfied as to each Defendant [25], and Plaintiff has tailored its remaining requests to respect the Court's ruling on electronic service by seeking only notice under Rule 65(a)(1) and reserving formal service for a later, properly supported motion. In view of the foregoing, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith and set a status hearing before the expiration of the Temporary Restraining Order, at which hearing Plaintiff intends to present a motion for preliminary injunction.

DATED:  August 12, 2026

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084 / IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail:  keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

17